IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

CARMEN T. MACDONALD,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C10-2045

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      A.   MacDonald's Education and Employment Background . . . . . . . . . 5
      B.   The Second Administrative Hearing . . . . . . . . . . . . . . . . . . . 5
           1.   Carmen MacDonald's Testimony . . . . . . . . . . . . . . . . 5
                a.   Questioning by ALJ . . . . . . . . . . . . . . . . . . . . 5
                b.   Questioning by MacDonald's Attorney . . . . . . . . . . . 8
           2.   Vocational Expert Testimony . . . . . . . . . . . . . . . . . . . 9
      C.   MacDonald's Medical History . . . . . . . . . . . . . . . . . . . . . . 10

V.    CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . 14
      B.   Objections Raised by Claimant . . . . . . . . . . . . . . . . . . . . . 16
           1.   Fully and Fairly Developed Record . . . . . . . . . . . . . . . . 16
                a.   Length of Sitting Time . . . . . . . . . . . . . . . . . . 17
                b.   "Frequent Breaks" . . . . . . . . . . . . . . . . . . . . 18
           2.   Rejection of Opinion of Treating Physician . . . . . . . . . . . 20
                a.   Rejection of Need for "Frequent Breaks" . . . . . . . . 22
                b.   Rejection of Need for Absences . . . . . . . . . . . . . . 23
           3.   Reliance on Non-Examining State Agency Medical
                Consultants . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

       4.     *Discrediting MacDonald's Subjective Allegations* . . . . . . . . 26

       5.     *The ALJ's RFC Assessment and Hypothetical Questions* . . . . 30

          *a.*     *The ALJ's Residual Functional Capacity Assessment* . 30

          *b.*     *The Hypothetical Questions* . . . . . . . . . . . . . . . . . 31

  *C.*    *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*VI.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*VII.*  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Carmen T. MacDonald ("MacDonald") on June 16, 2010, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits. MacDonald asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits. In the alternative, MacDonald requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On June 15, 2007, MacDonald applied for disability insurance benefits. In her application, MacDonald alleged an inability to work since June 19, 2006 due to back problems. MacDonald's application was denied on August 21, 2007. On December 7, 2007, her application was denied on reconsideration. On February 8, 2008, MacDonald requested an administrative hearing before an Administrative Law Judge ("ALJ"). On January 26, 2009, MacDonald appeared without counsel before ALJ Marilyn P. Hamilton for an administrative hearing. The hearing was postponed because MacDonald did not have updated medical records due to confusion about who would obtain these records. On June 24, 2009, MacDonald appeared via video conference with her attorney for a supplemental administrative hearing. Her husband, Kevin McDonald, and vocational expert, Roger Marquardt, also testified at the hearing. In a decision dated August 10, 2009, the ALJ denied MacDonald's claim. The ALJ determined that MacDonald was not

disabled and not entitled to disability insurance benefits because she was functionally capable of performing certain jobs that exist in significant numbers in the national economy, including an identification clerk, service/maintenance dispatcher, and auditing control clerk. MacDonald appealed the ALJ's decision. On April 22, 2010, the Appeals Council denied MacDonald's request for review. Consequently, the ALJ's August 10, 2009 decision was adopted as the Commissioner's final decision.

On June 16, 2010, MacDonald filed this action for judicial review. The Commissioner filed an answer on November 22, 2010. On December 24, 2010, MacDonald filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she was not disabled and could perform other work that exists in significant numbers in the national economy. On February 24, 2011, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On March 7, 2011, MacDonald filed a reply brief. · On October 28, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id*.

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010)

("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's

decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. MacDonald's Education and Employment Background

MacDonald was born in 1962. She received her GED when she was 18. At the hearing, MacDonald testified that she was able to add, subtract, multiply, and divide. She also stated that she could read, write, speak, and understand the English language.

The record contains a detailed earnings report for MacDonald. The report covers MacDonald's employment history from 1978 to 2006. Between 1990 and 2006, MacDonald earned between $5,520.69 (1994) and $21,142.56 (1992). She had no earnings in 2001. In 2006, MacDonald's last year of employment, she earned $6,069.55.

### B. The Second Administrative Hearing[1]

#### 1. Carmen MacDonald's Testimony

##### a. Questioning by ALJ

At the second administrative hearing, the ALJ questioned MacDonald about her past job. The ALJ inquired whether MacDonald believed she could perform her past work. MacDonald stated that she could not perform her past work. Specifically, she testified that "[I] know I couldn't do the warehouse work. It's all heavy lifting. Minimal 50 pounds routine. And I can't do that. As far as office work, you have to sit, and I can't sit for

---

[1] The first administrative hearing was postponed for lack of updated medical records. No witnesses gave testimony at that hearing. *See* Administrative Record at 81.

extended periods. I can't do it. I also had to do some bending and stooping for the filing, and I can't do that either."[2]

The ALJ also questioned MacDonald about her functional abilities:

Q: How long are you able to sit at one time now?
A: . . . an hour at the longest . . . at times less.
Q: How long are you able to stand at one time?
A: . . . I can probably stand an hour without having to sit down.
Q: How long are you able to walk at one time?
A: . . . I suppose I could walk an hour without having to sit down. . . . I exercise on a treadmill every day at home. I can do 20, sometimes 25 minutes on my treadmill before I have to sit down. . . . On my . . . treadmill 3.6 miles an hour is as fast as I can go.
Q: So how many miles do you figure that you actually end up walking when you walk 20 to 25 minutes?
A: I try to do two miles every day[.] . . . I do it in two parts, and sometimes three parts.
Q: What's the heaviest weight that you can lift and/or carry now?
A: I'm restricted to 25 pounds. I don't think I could carry 25 pounds routine.
Q: What's the heaviest thing you could carry on a frequent basis?
A: 10 or 15 pounds probably. I wouldn't be able to stand and hold that for six hours, but I can pick it up and carry it around if it needed to be moved.
Q: Are you able to bend over and touch your toes?
A: I can do that.
Q: Are you able to squat down and pick up an object from the floor?
A: I can do that. I can't do it routinely. But I can do that.
Q: Any problems with reaching?
A: Overhead. I can't hold my hands overhead.

(Administrative Record at 39-42.) The ALJ also questioned MacDonald about her limitations:

---

[2] *See* Administrative Record at 38-39.

Q: So I wanted to ask you in terms of frequent breaks, if you had a job where you were seated most of the time, how often would you need to get up?

A: Every half hour to hour.

Q: And he (Dr. Buchanan) talked about being absent from work. I believe he said he thought you'd be absent more than one day a month. Likely to be off more than a single day a month. Do you have an opinion on that?

A: I would say that's probably on the light side, depending on what I was trying to do.

Q: In terms of a seated job?

A: Anything that would. If I, if they're going to, if a place hired me that was willing to let me have breaks every hour, I might be able to get through that. I cannot sit for extended periods. I can't.

(Administrative Record at 43.) The ALJ then questioned MacDonald about her daily activities and sleeping habits:

Q: Tell me about your daily activities.

A: I start my day with morning stretches. Then I usually take a break for an hour or so. And then I do my treadmill for 20 minutes if I can go that long. Then I take a break, usually for 20 minutes or so. If I have laundry at that time, I might start a little laundry. Then I'll finish my treadmill, the last 20 minutes, take another break, put the laundry in the dryer. Take another break, take the laundry upstairs . . . . I eat lunch, take a nap. And that's kind of my day, fix supper when it's suppertime.

Q: So you routinely get about three hours of sleep at night?

A: Correct.

Q: And when you take a nap during the day, how long do you nap?

A: An hour to an hour and a half sometimes.

Q: And before you had problems with your, your back, how long were you sleeping at night?

A: Six to eight hours.

(Administrative Record at 43-46.) Finally, the ALJ asked MacDonald to describe her back pain. MacDonald responded that she always has pain in her back and described it as "a

7

burning, sharp, stabbing, sometimes dull aching, tingling, numbing in the legs."[3] She also said the pain has remained the same over time and noted that the more active she tries to be, the more pain she has.[4]

### b. Questioning by MacDonald's Attorney

MacDonald's attorney also questioned MacDonald. MacDonald's attorney asked MacDonald whether her physical condition has improved or deteriorated since June 19, 2006, her alleged disability onset date. MacDonald replied that she believed her condition has deteriorated. Specifically, she testified that:

> A: It gets harder to do daily activities with any frequency. Everything that I do has to be broke up, housework, laundry. I can't do those kind of things all in the same day. I can break them up, housework and light housework like vacuuming or mopping has to be done[.] . . . What used to take an hour and a half takes all day.
>
> Q: Of the physical activities that you've done in the past employment, what functions are you no longer able to do because of your physical limitations?
>
> A: The heavy lifting, twisting, turning, repetitive stooping or bending.

(Administrative Record at 49-50.)

### 2. Kevin MacDonald's Testimony

MacDonald's attorney also questioned MacDonald's husband, Kevin MacDonald ("Kevin"). MacDonald's attorney asked Kevin to describe MacDonald's physical limitations. Kevin testified that MacDonald has the desire to work, but her physical abilities have deteriorated too much to work. Specifically, he stated that she "[n]eeds help to do the things that she used to be able to do on her own."[5] MacDonald's attorney then asked Kevin whether MacDonald's pain medication is effective in alleviating her pain.

---

[3] *See* Administrative Record at 47.

[4] *Id.*

[5] *See* Administrative Record at 55.

8

Kevin responded that "[I]t's a hard question to answer with helping. Does it ever take it away, I don't believe so. I believe she's always in pain. It might assist with dulling it or whatever. But I believe she's in pain all the time."[6]

## 2. *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Roger Marquardt with a hypothetical for an individual who:

> can do light work[.] . . . The person must alternate between standing and sitting every 30 to 60 minutes. In other words, if they're working in a seated position, they have to get up to stretch, but remain at the workstation every 30 to 60 minutes. The person should never climb ropes, ladders, or scaffolds on the job, only occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch or crawl[.] . . . There should be no twisting. There should be no overhead lifting, bilaterally, no driving required on the job. The person should avoid concentrated exposure to hazards, such as moving machinery and unguarded heights. Given these limitations, could any of the past relevant work be done?

(Administrative Record at 61-62.) The vocational expert testified that under such limitations MacDonald could perform her past work such as general clerical duties, but that it was borderline. The ALJ provided the vocational expert with a second hypothetical which added the limitation that the individual would be absent from work two times in a month. The vocational expert stated that under such limitations, MacDonald could not perform her work, nor find competitive employment. The ALJ then added the limitation that the individual would be unable to perform at a consistent pace due to chronic pain. The vocational expert testified with such a limitation, MacDonald could not perform her past relevant work, and there were no jobs available in the national economy. The ALJ then changed the hypothetical from an individual being able to do light work, to an individual able to do sedentary work, but without both breaks and the inability to perform at a consistent pace. The vocational expert stated that no past relevant work could be

---

[6] *Id.* at 58.

performed, but that jobs in the national economy such as an identification clerk, dispatcher, or control clerk in auditing could be performed. The ALJ then asked whether these jobs could be performed with the limitations of absences or inability to perform at a consistent pace due to chronic pain, and the vocational expert stated in either case there would be no jobs available in the national economy with such limitations.

### C. MacDonald's Medical History

In August 2005, MacDonald met with neurosurgeon Dr. Russell Buchanan. An MRI showed "deformity C6-C7 with adjacent segment disc degeneration with disc collapse and osteophyte formation bilaterally at C5-C6."[7] On September 12, 2005, MacDonald underwent surgery to correct these issues.

In January 2006, MacDonald met with Drs. Headlam and Patel. She had an MRI on January 16, 2006 and a CT scan on January 30, 2006. The doctors found minimal to moderate circumferential bulges, mild to moderate facet hypertrophy, mild to moderate bilateral foraminal stenosis, and mild disc bulging on the lumbar spine.[8]

On February 1, 2006, and March 10, 2006, MacDonald received epidural steroid injections, apparently based on the previous MRI and CT scan. MacDonald reported temporary pain relief, though in Dr. Buchanan's notes he wrote, "[t]he pain that she is having is otherwise unchanged since she was previously evaluated."[9] On May 9, 2006, Dr. Buchanan opined "[MacDonald] is quite debilitated due to her low back pain," while also noting the pain had become "exquisitely worse" as it spread to the lower extremities.[10]

On June 1, 2006, MacDonald underwent a lumbar provocation diskography and on June 20, she underwent a lumbar laminectomy. After the June 1 procedure, Dr. Buchanan

---

[7] *See* Administrative Record at 64.

[8] *Id*. at 317-18, 381-82.

[9] *Id*. at 263-273.

[10] *Id*. at 341.

noted, "[f]or two months or so the pain became exquisitely worse with an ache across the low back and radiation into the lateral aspect of her left leg. She also developed numbness and tingling. MRI scan did reveal significant disk degeneration at L4-L5, but no significant disk herniation."[11]

On December 4, 2006 MacDonald had another CT scan. At her follow up visit, on December 14, she complained of low back pain, registering a 5 to 6 on a scale of 1 to 10.[12] MacDonald had another MRI on December 18, and at her follow-up on December 21, she reported her pain was at a 7, though her gait was "coordinated and smooth," she was able to ambulate on heels and toes, and she was able to "squat and regain a standing position without difficulty."[13] Dr. Buchanan also noted that "[s]he certainly is behaving as if there is still some instability in the low back. I feel some of this has a component of muscle degeneration or muscle pain."[14]

On February 1, 2007, MacDonald reported her pain at 3, though Dr. Buchanan noted her "gait is significantly impaired."[15] Dr. Buchanan recommended a lumbar facet injection, and MacDonald received the injection from Dr. Federhofer the next week. At her follow-up visit on April 2, 2007, MacDonald complained of "constant low back pain" and Dr. Buchanan noted her gait was "[s]ignificantly impaired. She has got a limp on the right. She cannot achieve a standing posture from sitting. She has difficulty squatting to regain standing. She cannot flex in order or touch her knees all due to low back pain."[16]

---

[11] *Id.* at 339.

[12] Doctors frequently asked MacDonald her pain levels. She reported pain levels from 3 to 8 at various doctor visits. In fact, sometimes she would report pain up to a 12 out of 10 following activity.

[13] *See* Administrative Record at 335.

[14] *Id.*

[15] *Id.* at 333.

[16] *Id.* at 330.

On May 2, 2007, MacDonald underwent surgery for anterior lumbar interbody fusion. At her June follow-up, MacDonald reported no improvement in her pain, but the CT scan of her lumbar spine showed good alignment, no failure of the hardware, and no significant stenosis. MacDonald continued to describe no improvement in pain at doctor appointments on July 16, 2007 and September 24, 2007.

On August 21, 2007, Dr. Laura Griffith, D.O. provided a residual functional capacity ("RFC") assessment of MacDonald on behalf of the Iowa Disability Determination Services ("IDDS"). Dr. Griffith determined that MacDonald could occasionally lift 20 pounds, frequently lift 10 pounds, stand for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour work day. Dr. Griffith also indicated MacDonald should only occasionally climb ramps or stairs, balance stoop, kneel, crouch, and crawl.

In November, MacDonald met three times with Dr. Federhofer and received a fluoroscopy spine injection at the second appointment. This provided some temporary pain relief, though pain in her back was "still prominent."

On December 7, 2007, Dennis Weis, M.D. provided another RFC for MacDonald on behalf of the IDDS and confirmed that MacDonald could still only perform light activities as indicated in the August RFC.[17] On December 12, 2007, MacDonald reported to Dr. Federhofer that her pain was at a 7 out of 10.

On February 28, 2008, MacDonald had another MRI of her lumbar spine which revealed a disk bulge at L3-4, and foraminal and canal narrowing. MacDonald saw Dr. Federhofer on March 1, 2008 and April 4, 2008, and reported some improvement in her pain. However, on October 27, 2008, MacDonald reported that the pain had not gotten better since the procedure on May 2, 2007.

---

[17] It is unclear where the IDDS indicates MacDonald is limited to light work in the August RFC.

MacDonald saw Dr. Federhofer again on December 12, 2008, and he noted that she has "difficulty straightening up" and her "pain worsens as the day progresses."[18] On January 6, 2009, MacDonald reported to Dr. Federhofer that her pain was at an 8. On March 3, Dr. Afzal noted, "[MacDonald] continues to have significant pain that keeps her from being active, standing for prolonged duration, or engag[ing] in meaningful activities during the daytime. . . . The pain is present all day. It is nearly constant. It keeps on getting worse as the day goes on. It keeps her from sleeping, performing daily activities, impairs her ability to work."[19] On March 9, 2009, Dr. Buchanan noted that there was a "significant impairment" in gait, that MacDonald has "difficulty achieving a standing posture from sitting[.] . . . She cannot squat and regain standing or flex forward to touch her knees due to low back pain. She has significant limitation in range of motion[.]"[20]

On May 21, 2009, Dr. Afzal implanted electrodes for spinal cord stimulation into MacDonald's back. However, MacDonald was not sure whether a permanent implant would be beneficial because it did not help her pain very much.

In advance of the hearing with the ALJ, Dr. Buchanan, MacDonald's treating physician, prepared a letter which provided his opinion on MacDonald's diagnosis:

> . . . Ms. MacDonald carried two diagnoses for describing her chronic low back pain syndrome. The first is degenerative disk disease at two levels with severe axial back pain, L4-L5 and L5-S1. The additional diagnosis is foraminal stenosis associated with facet hypertrophy and degenerative disk at L4-L5 and L5-S1.
>
> . . . [S]tructurally Ms. MacDonald's lumbar spine is quite strong . . . but she continues to have severe low back pain, which does limit her in terms of function. She does have difficulty stooping and bending at the waist. She cannot sit for longer periods. I am not clear as to whether it is 30 minutes

---

[18] *See* Administrative Record at 499.

[19] *See* Administrative Record at 471.

[20] *Id.* at 540.

or 1 hour, but she is certainly limited in that she can only sit for certain periods of time.

. . . I would limit her to 25 pounds or less and no overhead lifting. Ms. MacDonald has significant axial back pain, and I do believe this limits her in terms of physical activity and activities of daily life. I think Ms. MacDonald needs, in terms of accommodating her chronic low back pain, frequent breaks, lumbar support and aggressive exercise will help her manage with her back pain syndrome.

. . . I do feel that Ms. MacDonald is disabled to a reasonable degree, in that she will need frequent breaks, and is likely to be off more than a single day per month due to her chronic low back pain complaints and exacerbations thereof. . . .

(Administrative Record at 613.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that MacDonald is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

(1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id.* In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that MacDonald had not engaged in substantial gainful activity since June 19, 2006. At the second step, the ALJ concluded from the medical evidence that MacDonald had the following severe combination of impairments: degenerative disc disease of the cervical spine, status post surgical fusion; and degenerative disc disease of the lumbar spine with foraminal stenosis, status post surgical fusion. At the third step, the ALJ found that MacDonald did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1. At the fourth step, the ALJ determined MacDonald's RFC as follows:

> [MacDonald] has the residual functional capacity to perform sedentary work . . . with the additional limitations that [MacDonald] must alternate positions every 30-60 minutes (defined as getting up to stretch but remaining at the

workstation). [MacDonald] should never climb ladders, ropes, or scaffolds on the job, but can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. [MacDonald] should not have to do any twisting, overhead lifting bilaterally, or driving on the job. She should avoid concentrated exposure to hazards, such as moving machinery and unguarded heights.

(Administrative Record at 14.) Also at the fourth step, the ALJ determined that MacDonald is unable to perform any past relevant work. At the fifth step, the ALJ determined that "considering [MacDonald's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."[21] Therefore, the ALJ concluded MacDonald was not disabled.

### B. Objections Raised by Claimant

MacDonald argues that the ALJ erred in five respects. First, MacDonald argues that the ALJ erred by failing to fully and fairly develop the record. Second, MacDonald argues that the ALJ erred in rejecting the opinion of treating physician, Dr. Russell Buchanan, regarding MacDonald's need for frequent absences and frequent breaks. Third, MacDonald argues that the ALJ erred in relying on the non-examining state agency medical consultants. Fourth, MacDonald argues that the ALJ erred in finding MacDonald "generally credible" yet discrediting her subjective allegations. And finally, MacDonald argues the ALJ erred because her RFC assessment and hypothetical questions do not precisely set forth MacDonald's credible limitations.

### 1. Fully and Fairly Developed Record

MacDonald argues that the ALJ failed to fully and fairly develop the record with regard to the length of time MacDonald could sit and with regard to the term "frequent breaks." The court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because

---

[21] *See* Administrative Record at 19.

an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser*, 545 F.3d at 639. Additionally, an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citation omitted).

### a. *Length of Sitting Time*

MacDonald first alleges that the ALJ failed to fully and fairly develop the record with regard to how long she could sit at a potential job without needing to stand up. In her decision, the ALJ noted that Dr. Buchanan opined that he was "not clear" as to whether the claimant could sit for one hour or for 30 minutes, and accordingly the ALJ determined that the physician "had no medical opinion on the length of time the claimant could sit."[22] MacDonald argues that the ALJ should have asked for clarification from the physician and that it was her responsibility to "ask for an exact time frame for sitting and standing and not just to find no opinion was given."[23]

Although the ALJ noted the doctor "had no medical opinion on the length of time the claimant could sit," the ALJ fully developed the record on this issue as it was included in her hypothetical question to the vocational expert and her RFC assessment. The question to the vocational expert noted "[t]he person must alternate between standing and

---

[22] *See* Administrative Record at 18.

[23] *See* MacDonald's Brief (docket number 12) at 20.

sitting every 30 to 60 minutes,"[24] and the RFC stated "[MacDonald] has the residual functional capacity to perform sedentary work. . . . with the additional limitations that [MacDonald] must alternate positions every 30-60 minutes (defined as getting up to stretch but remaining at the workstation)."[25] MacDonald claims the ALJ's comments do not accurately represent Dr. Buchanan's letter which states:

> She cannot sit for longer periods. I am not clear as to whether it is 30 minutes or 1 hour, but she is certainly limited in that she can only sit for certain periods of time.

(Administrative Record at 613.)

The Court believes that the statements in the hypothetical question and the RFC are congruent with the opinions noted in Dr. Buchanan's notes. Additionally, MacDonald's own testimony provides that:

> Q:  [I]f you had a job where you were seated most of the time, how often would need to get up?
> A:  Every half hour to hour.

(Administrative Record at 43.) Accordingly, the Court finds that the length of time MacDonald could sit was not a "crucial issue" left undeveloped and therefore the ALJ is not required to "seek additional clarifying statements from a treating physician." *See Stormo* 377 F.3d at 806 (citation omitted). Therefore, the Court concludes that the ALJ fully and fairly developed the record on the issue of MacDonald's ability to sit for 30-60 minutes. *See Cox*, 495 F.3d at 618.

### b.  *"Frequent Breaks"*

Next, MacDonald alleges the ALJ failed to fully and fairly develop the record with regard to the term "frequent breaks." In Dr. Buchanan's letter before the hearing with the ALJ, he noted:

> I think Ms. MacDonald needs, in terms of accommodating her chronic low back pain, frequent breaks, lumbar support and

---

[24] *See* Administrative Record at 61.

[25] *Id.* at 14.

aggressive exercise will help her manage with her back pain syndrome.

(Administrative Record at 613.) MacDonald argues that the need for frequent breaks arises because "[her] testimony during the hearing, her answers to questions on forms, her mother's brief comments during the first hearing, and even observations in the medical records by the examining physicians [indicate] that Ms. MacDonald would require breaks that would allow her to walk away from her work station, lay down, and rest up for an hour at a time."[26] Specifically, MacDonald relies on Dr. Buchanan's letter (Exhibit 24F) in which he opined, "I am not clear as to whether it is 30 minutes or 1 hour, but she is certainly limited in that she can only sit for certain periods of time."[27] In the subsequent paragraph, Dr. Buchanan opined that Ms. McDonald needs "frequent breaks."[28] Furthermore, MacDonald argues, "it is not clear from the record how frequently Ms. MacDonald would need rest periods or how long the rest period would last."[29]

Turning to the record, at the administrative hearing, when asked by the ALJ about her daily activities, MacDonald responded:

> I start my day with morning stretches. Then I usually take a break for an hour or so. And then I do my treadmill for 20 minutes if I can get that long. Then I take a break, usually for 20 minutes or so. If I have laundry at that time, I might start a little laundry. Then I'll finish my treadmill, the last 20 minutes, take another break, put the laundry in the dryer. Take another break, take the laundry upstairs. Usually then, by then it's lunchtime. I eat lunch, take a nap. And that's kind of my day[.]. . .

(Administrative Record at 43-44.) Also at the administrative hearing, the ALJ and MacDonald discussed her need for "frequent breaks":

---

[26] *See* MacDonald's Brief (docket number 12) at 20.

[27] *See* Administrative Record at 613.

[28] *Id.*

[29] *See* MacDonald's Brief (docket number 12) at 20.

Q:      Now your doctor submitted a statement[.] . . . So I
        wanted to ask you in terms of frequent breaks, if you
        had a job where you were seated most of the time, how
        often would you need to get up?
A:      Every half hour to hour.

(Administrative Record at 43.) It is unclear whether the ALJ equates "frequent breaks"
with how often MacDonald would need to stand up from sitting, although Dr. Buchanan
mentions them in different paragraphs. Furthermore, it is unclear whether MacDonald
was responding to the prefatory clause ("in terms of frequent breaks") or whether she was
responding to the operative clause ("how often would you need to get up?") in answering
this question, and therefore it raises the question of whether MacDonald asserted that she
needed a break every 30-60 minutes or that she needed to stand up every 30-60 minutes.
Moreover, the court believes it is important to know what Dr. Buchanan meant by
"frequent breaks." Bearing in mind that an ALJ should only contact a treating physician
"if the doctor's records are 'inadequate for us to determine whether the claimant is
disabled' such as 'when the report does not contain all the necessary information[.] . . .'"
*Goff*, 421 F.3d at 791 (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e)), the Court finds
that it is unclear what Dr. Buchanan meant by "frequent breaks." Because Dr. Buchanan's
opinion on the frequency and length of breaks needed by MacDonald may have a bearing
on whether MacDonald is disabled, this Court finds that a "crucial issue" is undeveloped.
*See Stormo*, 377 F.3d at 806 (citation omitted). Therefore, the Court concludes that the
ALJ must "seek additional clarifying statements from a treating physician," Dr. Buchanan,
regarding MacDonald's need for frequent breaks. *See id.*

## 2.      *Rejection of Opinion of Treating Physician*

MacDonald argues that the ALJ failed to properly evaluate the opinions of her
treating physician, Dr. Buchanan. Specifically, MacDonald argues that the ALJ
discounted Dr. Buchanan's opinions that she would need "frequent breaks" and that she
would likely be absent more than once a month due to chronic low back pain. MacDonald

asks that the ALJ's determinations about these matters be reversed and remanded for further consideration.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.; see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The regulations also require an ALJ to give "good reasons" for rejecting statements provided

by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

### a.    Rejection of Need for "Frequent Breaks"

MacDonald claims that the ALJ implicitly rejected Dr. Buchanan's limitation of "frequent breaks" in her RFC.  As discussed in section *V.B.1.b.* of this Ruling, it is unclear based on the ALJ's question at the hearing whether she equates "frequent breaks" with MacDonald's need to stand up after a period of sitting.  Moreover, the ALJ's opinion also confuses the issue:

> As for the opinion evidence, treating specialist Russell Buchanan, M.D., submitted an opinion of the claimant's functioning for disability determination purposes.  Although the doctor stated in his opinion that the claimant was 'disabled to a significant degree' and opined she would miss more than a day of work per month, he also opined work limitations of an ability to lift 25 pounds or less, with no overhead lifting and frequent breaks, but difficulty stooping and bending at the waist.

(Administrative Record at 18.)  The ALJ then stated that "the issue of whether an individual is 'disabled' . . . is reserved to the Commissioner of Social Security," seeming to imply that the ALJ would not give this opinion any weight.[30]  Next, the ALJ stated "the doctor's opinion (with the exception of opining absences of more than one day a month, which is not supported by the medical evidence of record at all) is supported by his own longitudinal treatment history of the claimant, and is given controlling weight as to the specific limitations on work-related functioning."[31]  Together, these statements seem to indicate the ALJ made a determination that Dr. Buchanan's opinion should be given controlling weight, except with regard to his opinion regarding whether MacDonald was disabled and his opinion that MacDonald would be absent from work more than one day

---

[30] *See* Administrative Record at 18

[31] *Id.*

per month due to her impairments. Therefore, it is unclear whether or not the ALJ has given controlling weight to Dr. Buchanan's opinion that MacDonald requires "frequent breaks." The Court further points out that "frequent breaks" are not mentioned in the ALJ's RFC or the ALJ's hypothetical question to the vocational expert,[32] even though Dr. Buchanan's other opinions concerning how much weight MacDonald can lift, and whether she can bend or stoop are included.

If the ALJ did not intend to give controlling weight to Dr. Buchanan's opinion that MacDonald needed frequent breaks, the Court finds the ALJ failed in her duty to "give good reasons" for rejecting the statement of a treating physician. *See* 20 C.F.R. §404.1527(d)(2); *see also McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008)(noting "the problem with the ALJ's opinion is that it is unclear whether the ALJ *did* discount [a doctor's] opinion, and, if it did so, why"). Similarly, if the ALJ intended to give controlling weight to Dr. Buchanan's opinion that MacDonald needed frequent breaks, she must also articulate her rationale more clearly with "good reasons." *See* 20 C.F.R. § 404.1527(d)(2). Therefore, on remand, the ALJ must fully and fairly develop the record as discussed in section *V.B.1.b.* of this Ruling, and then determine whether to give controlling weight to Dr. Buchanan's opinions regarding Macdonald's need for "frequent breaks" based on the standards discussed above.

### b.  *Rejection of Need for Absences*

MacDonald argues that the ALJ erred in failing to include Dr. Buchanan's limitation that the claimant would need to be absent more than once a month due to her chronic back pain. While the ALJ gave controlling weight to many of Dr. Buchanan's opinions, she opined the limitation that MacDonald will need absences of more than one day a month "is

---

[32] *See* Administrative Record at 63. While questioning the vocational expert, the ALJ asked "if I were to add a person is unable to perform at a consistent pace due to chronic pain, would there be any past relevant work." It is unclear what the ALJ meant by the phrase "consistent pace," but even if this was her interpretation of "frequent breaks," it is unclear if this was Dr. Buchanan's interpretation. Therefore, the ALJ would still need to fully develop the record as discussed in section *V.B.1.b.* of this Ruling.

23

not supported by the medical evidence of record at all."[33]   In doing so, the ALJ rejected the opinion of the treating physician which ordinarily "will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Singh*, 222 F.3d at 452 (citations omitted).  Prior to coming to this conclusion, the ALJ went over the medical record in detail and determined "the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision and the residual functional capacity finding in this case is justified."[34]

The record demonstrates that the ALJ merely laid out objective evidence and a page later said Dr. Buchanan's limitation of more than one absence a month "is not supported by the medical evidence of record at all," without making any connections to the objective evidence or providing any "good reasons" why MacDonald would not require more than one day off a month. *See* 20 C.F.R. § 404.1527(d)(2).  Before discounting the opinion of the treating physician, there "must be competent evidence in the record to support the conclusions of the ALJ, and the ALJ must discuss in his opinion the evidence that he considered in reaching the conclusions expressed in the decision." *Branson v. Callahan*, 14 F. Supp. 2d 1089, 1096 (N.D. Iowa 1998).

The Commissioner urges the Court to rely on MacDonald's exchange with the ALJ in determining whether MacDonald requires absences:

> Q:   And he talked about being absent from work.  I believe
> he said he thought you'd be absent more than one day
> a month. . . .  Do you have an opinion on that?
> A:   I would say that that's probably on the light side,
> depending on what I was trying to do.
> Q:   In terms of a seated job?
> A:   Anything that would.  If I, if they're going to, if a place
> hired me that was willing to let me have breaks every

---

[33] *See* Administrative Report at 18.

[34] *Id.* at 16.

24

> hour, I might be able to get through that. I cannot sit
> for extended periods. I can't.

(Administrative Record at 43.) The Commissioner contends that "[MacDonald] expressly acknowledged that she could work without one or more absences a month, so long as she had a 'seated job' where she was allowed to take a break from sitting every hour."[35] The Court is not persuaded by the Commissioner's argument. MacDonald's answer to the initial question was that more than one absence a month was on the "light side," and in her subsequent answer she may have meant that in terms of a seated job, she could get through the month with one or more absences if given breaks. Regardless, the Court determines that remand is appropriate so that the ALJ can reconsider Dr. Buchanan's opinion regarding MacDonald's need for more than one absence per month. On remand, the ALJ must fully consider and discuss Dr. Buchanan's opinions, and provide "good reasons" for either accepting or rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must also consider Dr. Buchanan's opinions when making her RFC assessment for MacDonald.

### 3.    *Reliance on Non-Examining State Agency Medical Consultants*

MacDonald also argues that the ALJ erred in relying on the opinions of the non-examining state agency medical consultants. The opinions of non-treating, non-examining physicians "do not normally constitute substantial evidence on the record as a whole." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010)(quoting *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003)).

In this case, the ALJ gave "some weight" to the Iowa Disability Determination Service's ("IDDS") RFC.[36] Even if this was in error, the ALJ's RFC is more limiting than the IDDS's RFC,[37] so there was no material error in "incorporat[ing] the [IDDS's]

---

[35] *See* Commissioner's Brief (docket number 13) at 16.

[36] *See* Administrative Record at 18.

[37] For example, the ALJ's RFC limits MacDonald to "sedentary work" while the
(continued...)

restrictions into the residual functional capacity[,] . . . to the extent consistent with other factors in the record."[38] *See* 20 C.F.R. §404.1513(a)(1). MacDonald argues that by discounting Dr. Buchanan's opinion, the ALJ was forced to rely on the opinions of non-examining state agency consultants. However, the ALJ did not adopt any finding of the state agency consultants over the findings of Dr. Buchanan.[39] Accordingly, the Court concludes the ALJ committed no material error by placing its limited reliance in the non-examining state agency medical consultants.

### 4. Discrediting MacDonald's Subjective Allegations

MacDonald argues that the ALJ failed to properly evaluate her subjective allegations of disability. MacDonald maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered MacDonald's testimony and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the

---

[37](...continued)
IDDS's RFC only limits MacDonald to "light work."

[38] *See* Administrative Record at 18.

[39] *Id.* at 14, 18, 250-57, 465-66, 613-14.

objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In her decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned
> finds that the claimant's medically determinable impairments
> could reasonably be expected to cause the alleged symptoms;
> however, the claimant's statements concerning intensity,
> persistence and limiting effects of these symptoms are not
> credible to the extent they are inconsistent with the above
> residual functional capacity assessment. . . . At one point or
> another in the record[,] . . . the claimant has reported a myriad
> of daily activities consistent with the [RFC] detailed above.
> The claimant reports taking daily walks of 2-3 miles and doing
> light house keeping. She has no difficulty with personal care
> activities, drives short distances, and goes shopping without
> assistance. Ms. MacDonald reports that she can occasionally
> lift up to 20 pounds, stand/walk for less than one hour, and sit
> for about an hour. She helps her mother with errands/doctor
> appointments. While the claimant has engaged in a variety of
> treatment, she reported some success with medication and
> overall decrease in her pain to a mid-level of 4 out of
> 10[.] . . . While she does have pain with prolonged activity
> and experiences sleep disturbance, the claimant variously
> reported her pain was nearly completely relieved with lying
> down and, contradictorily, was better with activity. However,
> even with her impairments, the claimant would be expected to
> be capable of the [RFC] as outlined above. . . . Overall, the
> claimant's reports have been consistent and she is considered
> generally credible. She has testified to a considerable level of
> daily activity, while somewhat limited by pain, does not
> preclude all work-like activity. She testified to taking pain
> medications, which make the pain more bearable with no side
> effects. She testified she has no difficulties with concentration
> or memory. Her testimony overall is consistent with the
> opined specific limitations of her treating specialist, reflected
> in the residual functional capacity above, which imposes
> significant functional limitations.

(Administrative Record at 16-18). In her decision, the ALJ properly set forth the law for
making credibility determinations under *Polaski* and the Social Security Regulations.[40]
An ALJ, however, may only discount a claimant's subjective complaints if there are

---

[40] *See* Administrative Record at 16-17.

inconsistencies in the record as a whole. *See Finch*, 547 F.3d at 935 (citations omitted). Here, the ALJ concluded "claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment,"[41] because MacDonald testified she was able to engage in various activities that precluded more limitations.[42]

While the ALJ has provided a discussion of MacDonald's subjective allegations, the Court questions whether the ALJ explicated her reasons for finding MacDonald's subjective allegations of pain or limitations inconsistent with the record as a whole. The record reflects that MacDonald has received treatment throughout the period and has reported pain throughout her treatment, including more significant pain recently.[43] Moreover, she has received various different types of treatment to solve her back pain problems. Additionally, doctors have diagnosed her pain and have commented on the severity and persistency of the pain. Although MacDonald has engaged in various activities, the Eighth Circuit stated it "has repeatedly observed the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work." *Reed v. Barnhart*, 399 F.3d 917, 924 (8th Cir. 2005).

Accordingly, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Ford*, 518 F.3d at 982; *Baker*, 159 F.3d at 1144; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ simply states that MacDonald's "statements concerning the intensity,

---

[41] *Id.* at 16.

[42] *Id.* at 17.

[43] The Court is troubled by the ALJ's limited discussion of MacDonald's subjective allegations of pain. The Court mentions that at one point MacDonald reported her pain at a 4, but the ALJ does not mention that MacDonald reported higher levels of pain, especially more recently.

persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[44]  The ALJ's decision provides no reasons for discounting MacDonald's testimony other than her allegations are inconsistent with the ALJ's RFC assessment. *See Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant).  Because the ALJ's decision lacks any discussion of the reasons for discrediting MacDonald, except that her allegations are inconsistent with the ALJ's RFC assessment, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to MacDonald's credibility.  On remand, the ALJ shall set forth in detail her reasons for finding MacDonald's subjective allegations to be credible or not credible.  If on remand, the ALJ finds MacDonald's testimony not to be credible, the ALJ shall fully explain the reasons for her credibility determination and fully explain the inconsistencies between MacDonald's subjective allegations and the evidence in the record.

### 5.     *The ALJ's RFC Assessment and Hypothetical Questions*

Lastly, MacDonald argues that the ALJ's RFC and hypothetical questions to the vocational expert do not set forth all of MacDonald's credible limitations.  Specifically, MacDonald argues that the ALJ failed to include "frequent breaks" in the RFC and presumably (if the ALJ erred in rejecting Dr. Buchanan's opinion that MacDonald needed more than one absence a month) the requirement of absences.  Consequently, MacDonald argues that the ALJ's decision should be reversed and remanded for a proper hypothetical question based on a proper RFC.

### a.     *The ALJ's Residual Functional Capacity Assessment*

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience.  *Beckley*, 152 F.3d at 1059.  The ALJ is responsible for assessing a claimant's RFC, and his or her assessment

---

[44] *See* Administrative Record at 16.

must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Although the ALJ appeared to give controlling weight to Dr. Buchanan's opinion that MacDonald would need frequent breaks in her decision, it is not clear whether the ALJ included this in her RFC. As discussed in sections *V.B.1.b.* and *V.B.2.a.* of this Ruling, the Court remanded this matter to fully and fairly develop the record as to Dr. Buchanan's opinion that MacDonald needs "frequent breaks" and to provide her reasoning for determining whether or not to give controlling weight to this opinion. Furthermore, in accordance with section *V.B.4.*, the Court also remanded this matter so that the ALJ could reconsider MacDonald's subjective allegations in assessing MacDonald's residual functional capacity.

With regard to Dr. Buchanan's opinion that MacDonald will require more than one absence a month, the Court further requires on remand, the ALJ to reconsider Dr. Buchanan's opinion as detailed in section *V.B.2.b.* in assessing MacDonald's residual functional capacity.

### b.    The Hypothetical Questions

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those

impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In sections *V.B.1.b.*, *V.B.2.a.*, and *V.B.2.b.* of this decision, the Court remanded this matter for further consideration of the opinions of Dr. Buchanan regarding the need for "frequent breaks" and absences. In section *V.B.4.*, the Court remanded this matter for further consideration regarding MacDonald's subjective allegations of pain. Accordingly, the Court determines that on remand, the ALJ shall reconsider the hypothetical question posed to the vocational expert to ensure that it captures the concrete consequences of MacDonald's limitations based on the medical evidence as a whole, including the opinions of Dr. Buchanan and MacDonald. *See Hunt*, 250 F.3d at 625.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that

the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to the opinions of Dr. Buchanan regarding "frequent breaks"; (2) give good reasons for discounting Dr. Buchanan's opinion regarding "frequent breaks" and absences; (3) detail her reasons for finding MacDonald's subjective allegations to be credible or not credible; and (4) demonstrate her RFC assessment and hypothetical question to the vocational expert were proper in light of the above failures. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record as to "frequent breaks," reconsider the rejection of Dr. Buchanan's opinions regarding "frequent breaks" and absences, reconsider MacDonald's subjective allegations, and fashion a proper RFC and hypothetical question based on the record as a whole.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 10ᵗʰ day of June, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA